JUDGE PAULEY

UNITED STATES DISTRICT COURT **13 CIV 5947**
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X          Civ. Action No.:
REINA FERNANDEZ,

                              Plaintiff,

            -against-                                       COMPLAINT
                                                            AND
                                                            JURY DEMAND

BANCO POPULAR NORTH AMERICA, D/B/A
POPULAR COMMUNITY BANK,

                              Defendant.
------------------------------------------------------------X

        Plaintiff REINA FERNANDEZ ("Ms. Fernandez" or "Plaintiff") by her

attorneys, Bromberg Law Office, P.C., and CAMBA Legal Services, Inc., as and for

her complaint against Defendant BANCO POPULAR NORTH AMERICA, D/B/A

POPULAR COMMUNITY BANK ("Defendant" or "Popular"), alleges as follows:


                    PRELIMINARY STATEMENT

        1.      Plaintiff brings this action against Popular for damages arising out of

its violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et*

*seq.*, and the rules and regulations thereunder.  In brief, on or about August 2012,

Ms. Fernandez began receiving a series of harassing phone calls from a fly-by-night

debt collection agency regarding an alleged credit card debt on an ancient account.

Ms. Fernandez, under the strain of the debt collector's harassing phone calls and

because of its false agency representations, gave the debt collector verbal

permission to make withdrawals totaling $1,602.50 from the checking account Ms.

Fernandez had with Popular. But Popular allowed the debt collector to make an additional, unauthorized withdrawal of $1,000. In the end, Popular permitted a total of five withdrawals in amounts totaling $2,602.50. As a result of the unauthorized $1,000 withdrawal, as well as other attempted unauthorized withdrawals, Plaintiff was charged $95 in overdraft fees. Plaintiff timely notified Popular that she had not authorized the $1,000 withdrawal. Ignoring its obligations under the EFTA, Popular refused to conduct an investigation of the unauthorized withdrawal or to reimburse Plaintiff for the unauthorized withdrawal.

<u>THE PARTIES</u>

2.      Plaintiff Reina Fernandez is 45 years old and resides at 615 W. 173rd Street, New York, New York.

3.      Ms. Fernandez is a "consumer" for the purposes of 15 U.S.C. § 1693a(6) of the EFTA and Regulation E, 12 C.F.R. §§ 205.2, 1005.2, because she is a natural person who has an account held by a financial institution and who was issued an access device by that financial institution and entered into an agreement for the provision of electronic fund transfer services with that financial institution.

4.      Defendant Popular is a bank registered with the New York State Department of Financial Services that maintains branches throughout the New York metropolitan area, including a branch at 1200 St. Nicholas Avenue in New York, New York.

5.      Popular is a "financial institution", as the term is defined by 15 U.S.C. § 1693a(9) of EFTA and Regulation E, 12 C.F.R. §§ 205.2(i), 1005.2(i), because it is a bank and directly or indirectly holds an account belonging to a consumer or issues an access device and agrees with a consumer to provide electronic fund transfer services.

## JURISDICTION AND VENUE

6.      This action arises under the Electronic Funds Transfer Act, 15 U.S.C. §1693 et seq., and the rules and regulations thereunder. 15 U.S.C. § 1693m(g) provides that civil actions brought under the EFTA may be commenced in any United States District Court without regard to the amount in controversy.

7.      Popular does business at its branch located at 1200 St. Nicholas Avenue, New York, New York, in the Southern District of New York, and, accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391(c).

## FACTS

8.      On or about October 2010 Ms. Fernandez opened a checking account at the Popular branch located at 1200 St. Nicholas Avenue in New York, New York. Ms. Fernandez maintained the checking account through 2012 to the present day.

9.      In early August 2012 Ms. Fernandez began receiving harassing phone calls from a debt collector identifying itself as Impact Financial Recovery ("Impact") concerning an alleged Providian credit card debt dating to 2003.

10.     Impact represented to Ms. Fernandez that it was Providian's representative or agent.

11.     Ms. Fernandez informed Impact that her income consisted entirely of exempt Social Security Disability benefits. Thus, pursuant to federal law her entire income was exempt from execution. Nevertheless, Impact continued its harassing phone calls to Ms. Fernandez.

12.     Impact sometimes called Ms. Fernandez as many as 10 times a day.

13.     Impact told Ms. Fernandez that it would send her written verification of the debt; however, Ms. Fernandez never received any such verification.

14.     On information and belief, Impact was not licensed as a debt collector by the New York City Department of Consumer Affairs, as is required by the New York City Administrative Code §20-490.

15.     Under the strain of Impact's persistent and harassing phone calls and in light of Impact's claims of being Providian's agent, Ms. Fernandez gave Impact verbal permission to withdraw $1,500 from the checking account she maintained at POPULAR in full satisfaction of the alleged credit card debt.

16.     After Ms. Fernadez gave Impact verbal permission to withdraw $1,500 from her Popular checking account, but before any such withdrawal was executed, Impact told Plaintiff it would have to withdraw an additional $100 from her checking account to pay an alleged tax. Impact claimed the alleged tax was incurred because Ms. Fernandez's alleged debt had been settled for less than the full amount.

-4-

17.    Impact told Ms. Fernandez that it would send her written verification of the satisfaction of the debt; however, Plaintiff never received any such verification.

18.    On August 21, 2012, Popular allowed Impact to withdraw $102.50, representing the alleged settlement tax, from Ms. Fernandez's checking account via an electronic terminal.

19.    On September 25, 2012, Popular allowed Impact to make three withdrawals in the amounts of $499, $500, and $501 from Ms. Fernandez's checking account via an electronic terminal.

20.    From August 21, 2012 to September 25, 2012 Popular allowed Impact to initiate transactions resulting in the withdrawal of $1,602.50 of exempt funds via an electronic terminal from Ms. Fernandez's checking account without any written authorization.

21.    Sometime between September 25 and October 3, 2012, Impact attempted to withdraw an additional $1,500 from Ms. Fernandez's Popular checking account through an electronic terminal. Impact was unable to withdraw the money only because Ms. Fernandez's checking account contained insufficient funds. Ms. Fernandez did not authorize and was not aware of this withdrawal attempt.

22.    On or about October 4, 2012, shortly after Plaintiff's Social Security Disability benefits had been direct-deposited into her Popular checking account, Popular allowed Impact to electronically withdraw $1,000 from Ms. Fernandez's

checking account. Ms. Fernandez did not authorize and was not aware of this unauthorized October 4, 2012 withdrawal.

23.    On or about October 4, 2012, Ms. Fernandez checked her Popular checking account balance to confirm receipt of her regularly scheduled Social Security Disability payment. When she saw her unexpectedly low balance and identified Impact's unauthorized October 4, 2012 withdrawal as the cause of her low balance she immediately called Popular to inform them of the unauthorized withdrawal. It was during this call that Ms. Fernandez learned of the failed withdrawal attempt sometime between September 25 and October 3, 2012.

24.    After Ms. Fernandez had orally notified Popular about Impact's October 4, 2012 unauthorized withdrawal, Popular did not inform Ms. Fernandez that she was required to give it written confirmation of the unauthorized withdrawal within 10 days.

25.    Ms. Fernandez also called Impact to dispute the October 4, 2012 withdrawal.

26.    On October 16, 2012, Ms. Fernandez instructed Popular not to allow Impact to make any further withdrawals from her checking account.

27.    On or about October 20, 2012, Ms. Fernandez went to her local Popular branch, located at 1200 St. Nicholas Avenue in New York, New York, to dispute the unauthorized withdrawal made on October 4, 2012. While there, an agent of Popular told Ms. Fernandez that Popular would not reimburse Ms. Fernandez for the unauthorized withdrawals and suggested that Ms. Fernandez call Impact to

seek reimbursement. In fact, the Popular Branch Representative called Impact from the Branch.

28.   During the October 20, 2012 telephone conversation among Ms. Fernandez, the Popular branch representative and Impact, Impact assured Ms. Fernandez that the unauthorized October 4, 2012 withdrawal was an error and promised Ms. Fernandez that it would return the $1,000 October 4 withdrawal and refund any overdraft fees associated with the withdrawal within the week. During the same conversation, the Popular branch representative spoke to Impact's representative and responded to Impact's promise to reimburse Ms. Fernandez for the unauthorized transactions by faxing Impact a copy of Ms. Fernandez's overdraft charge bank information.

29.   As a result of the October 20, 2012 phone conversation, Popular had actual notice, not only that  the October 4, 2012 withdrawal was unauthorized, but that Impact admitted that the October 4, 2012 withdrawal was unauthorized.

30.   The next week, Ms. Fernandez returned to her local Popular branch and spoke to a second Popular branch representative named (upon information and belief) Dania Salazar. During that conversation the branch representative confirmed that Impact had not deposited any funds. Ms. Salazar instructed Ms. Fernandez to file a police report.

31.   Ms. Fernandez went to both her local precinct and 111 Centre Street to file the Police report, but was essentially refused assistance.

32.     Upon information and belief, Popular did not conduct an investigation into the unauthorized withdrawal from Ms. Fernandez's checking account on October 4, 2012, despite the fact that Ms. Fernandez had reported the unauthorized withdrawal in early and mid-October 2012, and despite the fact that Impact admitted that the withdrawal was unauthorized.

33.     Popular did not provide Ms. Fernandez with the results of any Popular investigation, its determination concerning the unauthorized October 4, 2012 withdrawal, or its rationale for denying her claim.

34.     As a result of Popular's actions, Popular assessed Ms. Fernandez $95 in overdraft fees.

35.     As a result of Popular's actions, Ms. Fernandez suffered emotional distress, including anxiety, inability to sleep, and difficulty eating.

36.     On December 14, 2012 Ms. Fernandez demanded, in writing, that Impact refund all funds withdrawn from her Popular checking account.

37.     Unfortunately, sometime after taking Ms. Fernandez's money, Impact disappeared and was never to be heard from again.

38.     On June 5, 2013, on Ms. Fernandez's behalf, Brian Bromberg of Bromberg Law Office, P.C. sent a letter to Popular requesting the return of $1,197.50 – representing $1,102.50 in unauthorized withdrawals and $95 in overdraft fees. The letter was sent in an effort to resolve the matter without the necessity of court action. A true and accurate copy of Mr. Bromberg's letter – with account numbers redacted – is attached as Exhibit A.

-8-

39.     On or about June 21, 2013, Popular responded to Ms. Fernandez's June 5, 2013 demand. Popular's written response indicated that, "without demonstrative evidence that any of the automatic withdrawal transactions made by Impact were unauthorized," Popular would not reimburse Ms. Fernandez the $1,197.50 in unauthorized withdrawals. According to the response, Popular would reimburse Ms. Fernandez only $95, an amount equivalent to the total overdraft fees charged to Ms. Fernandez's checking account in connection with the unauthorized withdrawals. A true and accurate copy of Popular's written response – with account numbers redacted – is attached as <u>Exhibit B</u>.

40.     On or about June 24, 2013, Popular deposited $95 dollars in Ms. Fernandez's Popular checking account.

## LEGAL FRAMEWORK

41.     The Electronic Funds Transfer Act of 1978, 15 U.S.C. § 1693 *et seq.*, is intended to protect individual consumers engaging in electronic fund transfers. *See* § 1693(b) ("The primary objective of this subchapter … is the provision of individual consumer rights.").

42.     An "electronic terminal" means an electronic device, other than a telephone operated by a consumer, through which a consumer may initiate an electronic fund transfer. Such term includes, but is not limited to, point-of-sale terminals, automated teller machines, and cash dispensing machines". § 1693a(8).

43.    An "unauthorized electronic fund transfer" is defined in the EFTA as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit", § 1693a(12), except for an electronic transfer "(A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved that transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution." *Id.*

44.    An unauthorized electronic fund transfer constitutes an "error" for the purpose of § 1693f. See § 1693f(f)(1).

45.    A financial institution is required to investigate consumers' claims of error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within 10 days. § 1693f(a).

46.    If a bank decides to deny a claim of error, it must explain its findings and provide the customer with copies of the documents it relied upon in its investigation to conclude that an error did not occur. § 1693f(d); 12 C.F.R. § 205.11.

47.    Under EFTA, a consumer may not be held liable for an unauthorized electronic funds transfer except in certain limited circumstances. *See* 15 U.S.C.

§ 1693g.  Moreover, the consumer may never be held liable for an unauthorized transfer if:

- the unauthorized transfer does not occur through the use of a card or other access device; and

- the consumer does not fail to report the unauthorized transfer within 60 days after it appears on an account statement issued by the bank. *See* 15 U.S.C. § 1693g(a).

48.   Consumers may recover actual damages under EFTA, § 1693m(a)(1), plus an additional sum of from $100 to $1000, § 1693m(a)(2)(A), plus the costs of the action and a reasonable attorney fee, § 1693m(a)(3). Treble damages may also be awarded if the court finds either that the financial institution "did not make a good faith investigation of the alleged error," or that the financial institution "did not have a reasonable basis for believing that the consumer's account is not in error" §1693f(e).

49.   The federal regulations promulgated pursuant to EFTA, § 1693b, are found in Part 205 of Subchapter A of Chapter II of Title 12 of the Code of Federal Regulations and are known as "Regulation E". *See* 12 CFR § 205.1(a). The stated purpose of these federal regulations is to carry out the purposes of the EFTA, the primary objective of which "is the protection of individual consumers engaging in electronic fund transfers." 12 C.F.R. § 205.1(b).

50.   Supplement 1 to Part 205 of the EFTA's implementing regulations contains the "Official Staff Interpretations of the Regulations." Included in the Staff

Interpretations is the definition of "unauthorized electronic fund transfer" in Section 205.2 of the Regulations. The Staff stated that "[n]egligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E."

## CLAIM FOR RELIEF
### (Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*)

51.    Ms. Fernandez repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

52.    Here, Ms. Fernandez reported the unauthorized electronic fund transfers in early and mid-October 2012, less than 60 days after the statement on which the initial unauthorized transfer appeared.

53.    Ms. Fernandez authorized Impact to withdraw only $1,602.50 from her Popular checking account. Ms. Fernandez did not authorize the additional withdrawals totaling $1,000. And Impact was not authorized to make the additional withdrawals totaling $1,000.

54.    Moreover, Ms. Fernandez and Impact had agreed to settle the alleged Providian credit card debt in full for $1,500. Thus, Ms. Fernandez received no benefit from the unauthorized additional withdrawals totaling $1,000.

55.    Popular did not reimburse Ms. Fernandez for the unauthorized withdrawals totaling $1,000.

56.     Upon information and belief, Popular failed to conduct any investigation into the unauthorized electronic fund transfer reported by Ms. Fernandez.

57.     On information and belief, Popular had no reasonable basis for concluding that Ms. Fernandez's account was not in error.

58.     Because Popular has refused to reimburse Ms. Fernandez for the unauthorized withdrawal it allowed Impact to make on October 4, 2012, Ms. Fernandez has sustained actual damages in the amount of $1,000 pursuant to 15 U.S.C. § 1693m(a)(1).

59.     Ms. Fernandez has sustained additional actual damages, in an amount to be determined by the court, in that Popular's acts or failure to act caused Ms. Fernandez emotional distress, including anxiety, inability to sleep, and difficulty eating.

60.     Because Popular did not provisionally recredit Ms. Fernandez's account within ten days after Ms. Fernandez reported the unauthorized withdrawals; because Popular failed to conduct a good faith investigation of the alleged error; and because Popular had no reasonable basis for concluding that Ms. Fernandez's account was not in error; Ms. Fernandez is entitled, pursuant to § 1693f(e), to recover treble damages determined under § 1693m(a)(1).

61.     Because Popular ignored its obligations under the EFTA by willfully refusing to conduct any investigation into Ms. Fernandez's report of an unauthorized withdrawal; because Popular has persisted in its refusal even after

Ms. Fernandez by her attorneys contacted Popular in a good faith effort to resolve the dispute; because Popular's failure to act aided an unscrupulous debt collector who had committed numerous violations of the federal Fair Debt Collection Practices Act ("FDCPA") and New York law; and because Popular's failure to act was particularly egregious considering that Ms. Fernandez's sole source of income was Social Security Disability benefits, which are exempt from debt collection under federal law; Ms. Fernandez is entitled to recover statutory damages in the amount of $1,000 pursuant to § 1693m(a)(2)(A).

62.     Ms. Fernandez is entitled to recover costs and reasonable attorney's fees pursuant to § 1693m(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks that this Court:

1.      Enter judgment for Plaintiff on all causes of action;

2.      Enter an injunction requiring Popular to comply with the Electronic Fund Transfer Act and to train its employees accordingly;

3.      Award actual, statutory, consequential, treble, and punitive damages to the Plaintiff;

4.      Award reasonable attorney's fees and costs to the Plaintiff; and,

5.      Award such other and further relief as may be just, equitable, and proper.

## JURY DEMAND

-14-

Plaintiff respectfully requests a trial by jury.

Dated: New York, New York
       August 22, 2013

                                   Respectfully submitted,

                                   By: Brian L. Bromberg
                                   One of Plaintiff's Attorneys

Attorneys for Plaintiff

Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
40 Exchange Place
New York, NY 10005
(212) 248-7906


Matthew A. Schedler
Ricardo N. Avila
CAMBA Legal Services, Inc.
Madeline LaForgia, Esq., Director
885 Flatbush Ave., 2nd Fl.
Brooklyn, NY 11226
(718) 940-6311

# Exhibit A

# Bromberg Law Office, P.C.

| | |
|---|---|
| Brian L. Bromberg (Admitted in NY & CA) | 40 Exchange Place, Suite 2010 |
| Michael N. Litrownik, Associate (Admitted in NY & MA) | New York, NY 10005 |
| | Phone: (212) 248-7906 |
| | Fax:    (212) 248-7908 |

June 5, 2013

> Via Certified Mail, Return Receipt Requested
> Popular Community Bank
> ATTN: Legal Department
> 9600 Bryn Mawr Avenue
> Rosemont, IL 60018

Re:   Unlawful Transfers from the Account of Reina Fernandez, Ending in ▮▮▮

To Whom It May Concern:

This firm represents Reina Fernandez, a customer of your bank. I am writing to demand reimbursement of $1,102.50, which Popular Community Bank ("Popular") unlawfully permitted, in violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, to be withdrawn from Ms. Fernandez's Popular bank account by a fly-by-night debt collector that calls itself Impact Financial Recovery ("Impact"). In addition, Ms. Fernandez demands the $95 in overdraft fees that resulted from Popular allowing the unlawful withdrawals. The funds withdrawn consisted entirely of Social Security Disability ("SSD") benefits. The relevant facts are as follows.

In early August 2012, Ms. Fernandez began receiving a series of harassing phone calls from Impact concerning a purported ancient credit-card debt. Even after Ms. Fernandez informed Impact that her sole source of income was SSD benefits, which are exempt under federal law from debt collection, the calls did not cease. Eventually, Ms. Fernandez permitted Impact to withdraw $1,500 from her bank account and received an assurance that this would settle the alleged debt in full. Impact claimed that it also had to make an initial withdrawal of $100 to pay a "tax" because Ms. Fernandez was settling the debt for less than the full amount.

On August 23, 2012, Impact withdrew $102.50 from Ms. Fernandez's bank account for this alleged "tax." On September 27, 2012, Impact withdrew a total of $1,500 from her account in three increments ($499, $500, and $501). On October 8, 2012, shortly after Ms. Fernandez's SSD benefits had been direct deposited into her bank account, Impact withdrew an *additional* $1,000 from her account, *which she had not authorized*. Impact had also attempted to withdraw an additional $1,500 from her account on October 4, 2012, but was unable to do so because there was virtually no money in her account at the time.

1

In mid-October 2012, Ms. Fernandez went to her local branch, at 1200 St. Nicholas Avenue, New York, New York, to dispute the additional unauthorized withdrawals totaling $1,102.50. A bank teller told her that there was nothing Popular could do and that all she could do was attempt to get this amount reimbursed by Impact. Ms. Fernandez called Impact to dispute the October 8th withdrawal of $1,000. Ms. Fernandez also instructed Popular to stop any further withdrawals on October 16, 2012, but by this time Impact had already withdrawn a total of $2,602.50.

Impact appears to have violated numerous provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* through its abusive and deceptive conduct. Impact also does not appear to have a valid Department of Consumer Affairs ("DCA") license, which New York City requires for all debt collectors seeking to collect personal debts from New York City residents. Therefore, Impact was not permitted to attempt to collect any debt from Ms. Fernandez and all of Impact's withdrawals from her bank account were illegal.

For these reasons, under EFTA, Popular should not have permitted Impact to withdraw *any* money from Ms. Fernandez's account, but especially should not have permitted Impact to withdraw anything on top of the $1,500 Ms. Fernandez originally permitted. If you do not reimburse Ms. Fernandez in the amount of $1,197.50 – representing $1,102.50 in unlawful withdrawals plus $95 in related overdraft fees – by June 19, 2013, we will have no choice but to take further legal action. If additional legal action is required, EFTA provides for attorney fees and costs to the prevailing consumer. We are trying to resolve this informally without the necessity of court action, but will pursue attorney fees and costs if Ms. Fernandez has to file suit.

Very truly yours,

BROMBERG LAW OFFICE, P.C.

Brian L. Bromberg

# Exhibit B

 **POPULAR**
COMMUNITY BANK

Legal Division
120 Broadway, 16th Floor
New York, New York 10271
Phone: (212) 417-6609
Fax: (212) 417-6602

June 20, 2013

**VIA UPS Overnight Mail**

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, New York 10005

Re:    Reina Fernandez
       Account ending in ███ (the "Account")

Dear Mr. Bromberg:

Popular Community Bank ("PCB") is in receipt of your letter dated June 5, 2013 in reference to your client Reina Fernandez and the claim of unauthorized electronic transactions made on her Account during the period of August 2012 – October 2012 from Impact Financial Recover ("Impact"). Please be advised that, PCB is not in receipt of any documentation between Ms. Fernandez and Impact indicating (i) the number of authorized withdrawals, (ii) any express authorizations with respect to authorized withdrawals or (iii) evidence of written requests to terminate automatic withdrawals from the Account. Accordingly, the transactions are deemed to have been authorized by your client.

PCB values our customer relationships and we are sorry to learn about the hardships that Ms. Fernandez has encountered with seeking recovery of her funds from Impact; unfortunately, given that your client expressly authorized Impact to withdraw funds from the Account to settle outstanding debt obligations, without demonstrative evidence that any of the automatic withdrawal transactions made by Impact were unauthorized, PCB is not in a position to honor your client's request. However, as a courtesy, PCB will credit Ms. Fernandez's Account $95.00 for the overdraft fees incurred in connection with the transactions made my Impact.

Should you wish to discuss this matter further you may contact the undersigned at (212) 417-6609. Thank you.

Sincerely,

*Vonetta R Evans*

Vonetta Evans
Paralegal

Banco Popular North America operates under the assumed business name Popular Community Bank in all regions. Popular Community Bank and Banco Popular North America are the same FDIC insured institution. ©2012 Banco Popular North America. **MEMBER FDIC**